IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:24-cr-289-M-KS-14

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>WILLIAM FRANKLIN BEASLEY,<br><br>         Defendant. | **DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF APPEAL OF MAGISTRATE JUDGE'S ORDER OF DETENTION PENDING TRIAL** |

  Pursuant to 18 U.S.C. § 3145(b), Defendant William Franklin Beasley respectfully appeals the Magistrate Judge's Order of Detention Pending Trial. Mr. Beasley is a 64 year old combat veteran with a clean criminal record and a host of heart and other serious health conditions. After living a model life, Mr. Beasley made the misguided decision as a "prospect" with the Hells Angels Motorcycle Club to join a fight in a parking lot against rival motorcycle club members, leading to federal charges and his pretrial detention. Yet, detention is not warranted here because all of the statutory criteria weigh heavily in favor of release. Indeed, the Government has not shown by clear and convincing evidence that detention is needed to assure the safety of other persons and the community, which is why the U.S. Probation Office has recommended his release subject to certain conditions. Accordingly, Mr. Beasley requests a *de novo* detention hearing.[1]

---

[1] Mr. Beasley defers to the Court's preference on whether to receive evidence as part of its *de novo* review or, alternatively, proceed with argument based on the existing record.

## FACTS

Mr. Beasley, who is 64 years old, has lived in Fayetteville, NC, in the same house for nearly four decades. He served as a paratrooper in the U.S. Army for 27 years, deployed in multiple combat zones, and achieved the rank of Command Sergeant Major before his honorable discharge in 2004. After working for 10 years as a military contractor after his honorable discharge, he was forced to retire following a heart attack.

He is now 100% (*i.e.*, fully) disabled, suffering from a host of physical and mental conditions. As discussed further below, this includes congestive heart failure, degenerative disk disease, cancer, enlarged prostate, post-traumatic stress disorder, and traumatic brain injury from his military service. He requires frequent medical care for both chronic and acute conditions.

Although he has a clean criminal history and strong military record, in or around mid-2022, Mr. Beasley became a "prospect" of the Hells Angels Motorcycle Club—*i.e.*, an individual who seeks to join the club but is not yet a full patch member. Approximately one year later, on July 22, 2023, Mr. Beasley participated in a fight between members of the Hells Angel Motorcycle Club and the Pagan Motorcycle Club while wearing a "Rats Get Bats" shirt. As shown in the surveillance video, a Hells Angel member approached a Pagan member in a Dairy Queen parking lot and began to assault him, at which time approximately six other individuals, including Mr. Beasley, joined the fight. During the fight, Mr. Beasley is seen retrieving from his back pocket and swinging an indiscernible object. The altercation lasted approximately 15 seconds, at which time gunshots rang out, Mr. Beasley himself was

hit, and the crowd dispersed. The victim then entered a car and drove away with no visible injuries.[2] *See* Def.'s Exhibit 1 (Security Camera Footage) at 0:00:00–0:00:20.

On October 1, 2024, Mr. Beasley was charged in a multi-defendant indictment with two counts of violent crime in aid of racketeering ("VICAR") offenses; specifically, attempted murder (Count VI) and assault with a deadly weapon (Count VII). The premise of the charges against Mr. Beasley is that he intended to kill the victim and used a ball-peen hammer during the altercation.

A detention hearing was held before Magistrate Judge Numbers on October 15, 2024. After initially contending that these charges gave rise to a rebuttable presumption of danger, the Government later conceded no such presumption applies under the Bail Reform Act. Accordingly, the burden rested with the Government to establish by clear and convincing evidence that no conditions will reasonably assure the safety of other persons and the community. The U.S. Probation Office recommended that Mr. Beasley be released subject to certain standard conditions, such as a curfew and location monitoring under the supervision of a third party, namely, Mr. Beasley's wife.[3] DE 139 (Pretrial Services Report) at 5.

After presenting evidence of the assault, largely through the surveillance video, the Government argued that Mr. Beasley was charged with serious crimes, that the evidence against him was strong, and that Mr. Beasley's wife, the proposed

---

[2] The footage of the incident is attached as Defendant's Exhibit 1. Mr. Beasley can be seen in the footage as the individual wearing a red shirt and blue jeans.

[3] As discussed further below, the U.S. Probation Office has recently approved Mr. Beasley's son, Will Beasley who lives in Cleveland, Ohio, as another suitable custodian.

custodian, was unsuitable. The defense focused on Mr. Beasley's personal characteristics, discussed in detail below—most notably, his age, medical conditions, and lack of criminal history—and highlighted the missing pieces of the Government's case.

The court ultimately ordered Mr. Beasley's detention in light of the nature and seriousness of the offense. While recognizing Mr. Beasley's personal characteristics that strongly supported release, the court further claimed that these criteria somehow also weighed in favor of detention because Mr. Beasley's clean past showed his ability to lead a law-abiding life.

Recognizing that Mr. Beasley's "health issues are obviously a major concern," Def.'s Exhibit 3 (Audio Recording of Detention Hearing, Part 2) at 0:04:22, the court nonetheless made the "unusual" request, *id.* at 0:04:40, that Mr. Beasley be detained at the Federal Medical Center, Butner, a federal prison for male inmates with special health needs, or another Bureau of Prisons facility with sufficient medical capabilities. However, Mr. Beasley was recently re-located after his initial processing to the New Hanover County Detention Center, where he has not been receiving adequate medical treatment yet will remain detained there pending trial absent this Court's intervention.

## STANDARD OF REVIEW

"Upon motion of a detainee to a district judge for review of a Detention Order of a magistrate it is the duty of the district court to conduct a *de novo* hearing." *United States v. Ramey*, 602 F. Supp. 821, 822 (E.D.N.C. 1985) (citing *United States v. Williams*, 753 F.2d 329 (4th Cir. 1985)).

4

Case 5:24-cr-00289-M-KS   Document 228   Filed 10/23/24   Page 4 of 12

## ARGUMENT

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Anguah*, No. 5:19-MJ-1103-RN, 2019 WL 406144, at *1 (E.D.N.C. Jan. 31, 2019) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). Generally, for pretrial detention to be authorized, "the Government must convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person." *Salerno*, 481 U.S. at 750; *accord* 18 U.S.C. § 3142(f). In determining whether any conditions would reasonably assure the safety of the community, the court must evaluate and weigh four statutorily enumerated factors: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; [4] (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Here, all of these considerations support Mr. Beasley's release.

---

[4] In light of the law's command that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence," 18 U.S.C. § 3142(j), certain courts have held that "the weight of the evidence is the least important of the various factors." *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985); *see also United States v. Walls*, No. CR 2-06-192, 2008 WL 213886, at *2 (S.D. Ohio Jan. 23, 2008) ("The weight of the evidence is therefore the least important of the various factors."). In any event, the evidence against Mr. Beasley as to certain essential elements of the crimes charged is weak, as discussed below.

A. **Mr. Beasley's history and characteristics favor pretrial release.**

Under this factor, the court should consider the person's "character, physical . . . condition, past conduct, history relating to drug or alcohol abuse, [and] criminal history," among other things. 18 U.S.C. § 3142(g)(3)(A).

1. <u>Mr. Beasley suffers from life threatening health conditions.</u>

Here, there is unrebutted evidence that Mr. Beasley, who will soon be 65 years old, suffers from serious medical conditions and that pretrial detention places his life at risk. The most urgent threat to Mr. Beasley is the risk of a fatal heart attack. Mr. Beasley has suffered 15 heart attacks in his life, with his most recent heart attack occurring earlier this year. His cardiologist, in an effort to reduce the risk of heart failure, has placed 13 stents in his arteries to improve the flow of blood. Unfortunately, his condition has not improved. Mr. Beasley's cardiologist states that one of his arteries is currently 69% blocked, and that once it inevitably reaches the 75% blockage threshold, another surgery will be necessary.

Additionally, Mr. Beasley is proscribed Nitroglycerin, a drug that can stop a heart attack when taken immediately upon the onset of symptoms. Mr. Beasley has been directed by his physician to carry Nitroglycerin with him at all times. Yet, Mr. Beasley does not have permission to carry this lifesaving drug while he is detained.

Furthermore, Mr. Beasley ordinarily lives with a certified service dog that is trained to detect oncoming heart attacks before symptoms even set in. This allows Mr. Beasley to (1) take Nitroglycerin to potentially halt the heart attack, and (2) immediately call 911. Mr. Beasley's service dog has saved his life on multiple occasions by alerting him to an oncoming heart attack, allowing him to call 911 for

transport to a hospital where he received lifesaving care. Mr. Beasley cannot keep his service dog with him while detained.

Finally, in addition to serious concerns over his heart, Mr. Beasley suffers from numerous other health conditions that require frequent medical treatment and physician visits, including the following: melanoma; enlarged prostate; fatty liver; degenerative disc disease; neck and back pain; chronic obstructive pulmonary disease; post-traumatic stress disorder; anxiety; depression; and traumatic brain injury. Many of these conditions are due to Mr. Beasley's lengthy military service, discussed next.

2. <u>Mr. Beasley has an exemplary military service record.</u>

Mr. Beasley served his country admirably as a member of the U.S. Army for over 27 years. As a paratrooper, Mr. Beasley saw combat in Grenada in the 1980's, and in Operations Desert Shield and Desert Storm in the early 1990's. Mr. Beasley was honorably discharged in 2004 after achieving the rank of Command Sergeant Major, the highest rank that an enlisted soldier can achieve. As a result of injuries sustained during his military service, the Department of Veterans Affairs has declared Mr. Beasley to be 100% disabled.

The Magistrate Judge recognized Mr. Beasley's lengthy history of exemplary service, but somehow weighed this fact against Mr. Beasley because it indicated that he, more than others, should understand the importance of the rule of law. Other courts to consider this factor have concluded that honorable military service weighs heavily in the defendant's favor. *E.g., United States v. Foy*, No. 21-CR-00108 (TSC), 2021 WL 2778559, at *5 (D.D.C. July 2, 2021) (ordering pretrial release of January 6

defendant, despite the "gravity and unsettling nature" of his actions, given his "long history of law-abiding behavior, his military service, and the absence of any remarks . . . indicating a willingness or desire to engage in ongoing violence").

### 3. Mr. Beasley has lived a law-abiding life.

Having lived a law-abiding life, Mr. Beasley's background is quite different from the typical defendant who comes before this Court. He does not abuse drugs or alcohol. He has never been convicted of a felony. Mr. Beasley's only blemish on an otherwise spotless record is a 20 year old assault misdemeanor. The Government has not argued otherwise.

The Magistrate Judge again recognized Mr. Beasley's lack of criminal history, but indicated that this fact too somehow weighed against him because it showed that he knew how to lead a law-abiding life. In contrast to the Magistrate Judge's approach, other courts to consider this factor have recognized the self-evident point that the absence of a criminal record weighs in the defendant's favor. *E.g.*, *United States v. Eischeid*, 315 F. Supp. 2d 1033, 1036 (D. Ariz. 2003) (releasing, prior to trial, defendant charged with murder because government "presented no evidence to suggest that the charge is typical of [defendant's] behavior" and seriousness of charge did not outweigh fact that defendant had otherwise "lived a responsible and crime-free life").

### B. The Government's evidence as to specific elements of the charged crimes is weak.

Mr. Beasley is charged with attempted first-degree murder in aid of racketeering and assault with a deadly weapon in aid of racketeering. To be sure, Mr. Beasley participated in an assault commenced by another member of the Hells Angels

8

Motorcycle Club, but evidence of essential elements of both crimes charged is either weak or completely absent.

First, the Government does not offer any evidence that Mr. Beasley acted with the requisite intent for attempted first-degree murder. Under North Carolina law, "[a] person commits the crime of attempted first-degree murder if he specifically intends to kill another person unlawfully; he does an overt act calculated to carry out that intent, going beyond mere preparation; he acts with malice, premeditation, and deliberation; and he falls short of committing the murder." *State v. Cozart*, 131 N.C. App. 199, 202–03, 505 S.E.2d 906, 909 (1998); *see also United States v. Keene*, 955 F.3d 391, 398 (4th Cir. 2020) (to secure VICAR conviction, Government must prove violation of the underlying state law cited in indictment).

The Government has not offered any evidence of Mr. Beasley's intent, and in fact, multiple Government witnesses revealed on cross examination that they were unaware of any evidence against Mr. Beasley showing his specific planning or coordination of the assault that could serve as evidence of such intent. Although certainly a misguided decision, Mr. Beasley followed the lead of his co-defendants who started the fight—a far cry from attempted murder. Moreover, no evidence exists that Mr. Beasley even knew the victim or that the victim sustained *any* injuries, much less the injuries consistent with an attempted murder.

Second, the Government offered weak and inconsistent evidence that Mr. Beasley used a deadly weapon during the altercation, which is an essential element of assault with a deadly weapon. The Government has not recovered the weapon they claim was used, and instead based the charge on review of security footage. When

9

cross examined about this footage, which, at best, shows Mr. Beasley swinging an indiscernible object, the Government's first witness stated that "it appears to be a blunt object that looks like a hammer," but, "I can't tell you from the video 100% [that it is a hammer]." Def.'s Exhibit 2 (Audio Recording of Detention Hearing, Part 1) at 0:32:15. When asked, "So, you have no understanding one way or the other whether the object Mr. Beasley was actually swinging was actually a piece of leather, versus a hammer, right?" the witness responded, "No, sir." *Id.* at 0:33:15. The Government's second witness stated that Mr. Beasley specifically denied using a hammer when questioned upon arrest. And, the Government's third witness, who again asserted the hammer claim based on review of video footage and her supposed training and experience, replied on cross examination that "I can tell that it's consistent with what I've seen to be ball-peen hammers, but I can't say for certain that it's a hammer." *Id.* at 0:58:20. Indeed, the footage is attached as Defendant's Exhibit 1, which upon the Court's review, will not show that Mr. Beasley intended to commit a murder or that he used a hammer to inflict bodily injury.

Accordingly, although Mr. Beasley was involved in an assault, the Government's evidence against him is not "strong" as to the actual crimes charged.

### C. The Government has not shown that Mr. Beasley would pose a serious danger to anyone if he were released.

Mr. Beasley does not pose a *future* danger to anyone upon release, particularly in light of the conditions proposed in the Pretrial Services Report. *See* DE 139 at 5. In fact, Mr. Beasley is willing to consent to release conditions far more restrictive than what Pretrial Services has recommended. For example, Mr. Beasley is willing

to comply with 24/7 house arrest (other than for travel to necessary medical appointments).

Further, Mr. Beasley maintains that his wife, Mrs. Kate Beasley, who was approved by U.S. Probation, is a suitable custodian. The Government contorts two jail calls between Mr. and Mrs. Beasley in an effort to effectively claim that she is somehow loyal to the motorcycle club. The Government misinterprets such calls, but, in any event, Mr. Beasley has also proposed his son, Will Beasley, as an alternative custodian. Will Beasley, who does not have any criminal history and was just approved by U.S. Probation as a custodian, lives in the Cleveland, Ohio, regional area, near medical treatment but far from any co-defendants or potential witnesses.

## CONCLUSION

Mr. Beasley respectfully requests a *de novo* detention hearing and his release pending trial subject to conditions.

This the 23rd day of October, 2024.

/s/ Michael A. Goldsticker
Michael A. Goldsticker
NC State Bar No. 57617
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
P.O. Box 389 (Raleigh, NC 27602-0389)
Raleigh, North Carolina 27601
Phone: (919) 828-0564
Email: michaelgoldsticker@parkerpoe.com

*CJA Appointed Counsel for Defendant
William Franklin Beasley*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF System which will automatically send notice of the same addressed to the following counsel of record:

>Kelly L. Sandling
>Robert J. Dodson
>United States Attorney's Office - EDNC
>150 Fayetteville Street, Suite 2100
>Raleigh, NC 27601
>Email: kelly.sandling@usdoj.gov
>robert.dodson@usdoj.gov
>
>Alyssa Levey-Weinstein
>DOJ-Crm
>1301 New York Ave NW, Ste 700
>Washington, DC 20005
>Email: alyssa.levey-weinstein@usdoj.gov

This the 23rd day of October, 2024.

>/s/ Michael A. Goldsticker
>Michael A. Goldsticker
>NC State Bar No. 57617
>PARKER POE ADAMS & BERNSTEIN LLP
>301 Fayetteville Street, Suite 1400
>P.O. Box 389 (Raleigh, NC 27602-0389)
>Raleigh, North Carolina 27601
>Phone: (919) 828-0564
>Email: michaelgoldsticker@parkerpoe.com
>
>*CJA Appointed Counsel for Defendant*
>*William Franklin Beasley*